**Sansone OLEVARES, et al., Plaintiffs,**

v.

**VIKING DODGE, INC., et al., Defendants.**

**No. 79 C 1599.**

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1985.

Albert Koretzky, Chicago, Ill., for plaintiffs.

John Rafferty, Chicago, Ill., for defendants.

MEMORANDUM OPINION

GRADY, District Judge.

On September 30, 1982, following a bench trial of plaintiffs' Truth in Lending Act ("TILA") [1] claim against the defendants, we found defendants jointly liable to the plaintiffs in the amount of $1,000.00 in damages and $500.00 in attorney's fees. *Olevares v. Viking Dodge, Inc.*, No. 79 C 1599, Memorandum Op. at 11 (N.D.Ill. Sept. 30, 1982) (Grady, J.). On July 23, 1985, plaintiffs filed a citation to discover defendants' assets, claiming that defendants have not paid plaintiffs this judgment. *See* Ill. Rev.Stats. ch. 110, ¶ 2–1402, ch. 110A, ¶ 277 (judgment creditor commences enforcement proceeding by having citation of assets served).

The defendants have moved to quash the citation, arguing that plaintiffs have already been paid their judgment, because one of the two defendants, First Security Bank of Carey-Grove ("Bank") allegedly has reduced by $1500.00 a claim it has against the plaintiffs. The Bank's claim is apparently based on the installment contract plaintiffs entered into with the other defendant, Viking Dodge, Inc. ("Viking"), and which formed the subject matter of plaintiffs' TILA claim. Viking assigned all its rights under the contract to the Bank, and the Bank has never asserted this claim against the plaintiffs in court.

Defendants argue that there is a principle, apparently to be found in common law,

---

**1.** 15 U.S.C. § 1601 *et seq.*

that permits a judgment debtor to set off a creditor's judgment with an unadjudicated claim he has against the judgment creditor. In support of their motion, defendants cite *Corpus Juris Secundum*, a Sixth Circuit case, a California case, an Illinois case, and a Seventh Circuit case. Memorandum of defendant, Viking Dodge, Inc.; Bank's Memorandum in Support of Motion to Quash Citation to Discover Assets.

In response, plaintiffs argue that any action to enforce the installment contract was a compulsory counterclaim to plaintiffs' TILA claim under Fed.R.Civ.P. 13(a). Since the Bank did not assert that claim, they argue that the Bank's claim is barred, and cannot now be asserted as a defense in plaintiffs' enforcement proceeding. Even if the claim was permissive, not compulsory, plaintiffs argue that the claim cannot be asserted in this context. They distinguish defendants' cases and do not concede liability on the Bank's claim.

## DISCUSSION

Enforcement of federal judgments is governed by Fed.R.Civ.P. 69(a), which provides that "the procedure on execution [of a judgment] ... shall be in accordance with the practice and procedure of the state in which the district court is held, ... except that any statute of the United States governs to the extent that it is applicable." *See Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 950 (7th Cir.1981). Therefore, in determining whether defendants can offset the plaintiffs' judgment with the Bank's claim, we ask two questions: (1) does any federal statute preclude such a set-off; and (2) does Illinois law allow for such a set-off. *See Dias v. Bank of Hawaii*, 732 F.2d 1401, 1402 (9th Cir. 1984).

### Federal Law

In *Dias*, the Ninth Circuit refused to permit a bank to offset a TILA judgment against it with a claim by the bank pending against the plaintiff in state court. The court based its decision both on state law and TILA. The court found that allowing lenders to satisfy adverse TILA judgments by reducing their claims in other courts would frustrate the essential purpose of the Act. TILA's civil liability provisions were designed to encourage consumers to bring actions against creditors and thereby promote compliance with the Act. If creditors were allowed to offset TILA judgments against pending collection claims, the court reasoned that debtors would be discouraged from bringing TILA claims. *Id.* at 1403.

The Seventh Circuit applied a similar reasoning when it held that a lender's collection claim is not a compulsory counterclaim to a debtor's TILA action. *Valencia v. Anderson Brothers Ford*, 617 F.2d 1278 (7th Cir.1980), *reversed on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).[2] In *Valencia*, the court noted that treating collection claims as compulsory counterclaims would undermine TILA's object, because TILA plaintiffs could be faced with counterclaims exceeding their potential recovery under the Act. *Id.* at 1292. *See Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380, 383 (6th Cir.1984).

Therefore, there is at least some support for the position that TILA bars any lender set-off of a TILA judgment. Additionally, the Fifth Circuit has held that 15 U.S.C. § 1640 bars any set-off reducing the plain-

---

**2.** Thus, contrary to plaintiffs' assertion, the bank's claim was not a compulsory counterclaim under Fed.R.Civ.P. 13(a). In plaintiffs' Memorandum in Opposition to Motions to Quash, plaintiffs cite a Fifth Circuit case and a 1973 Northern District of Illinois case to support their position that the claim was compulsory. *Id.* at 2–3. They fail to mention *Valencia*. We reprimanded plaintiffs at some length in our previous opinion for citing *Valencia* in support of its position on the issue of law on which *Valencia* was overruled, without indicating that the Supreme Court reversed *Valencia* on this point. *Olevares*, Memorandum Op. at 7–8. The Supreme Court, however, did not reverse *Valencia* on the issue of whether debt counterclaims are compulsory to TILA claims. Therefore, it appears that plaintiffs' attorney has again violated Disciplinary Rule 7–106(b) of the Supreme Court of Illinois.

tiff's recovery of attorney's fees and costs. *Wright v. Tower Loan of Mississippi*, 679 F.2d 437, 446 (5th Cir.1983); *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357, 1365 (5th Cir.1979).[3]

### Illinois Law

■ Even if we did not find that TILA completely or partially bars a set-off here, defendants have failed to demonstrate that Illinois law would permit such a set-off.

As indicated, defendants have relied on various cases, only two of which could have involved Illinois law: *Meadows v. Radio Industries, Inc.*, 222 F.2d 347 (7th Cir. 1955), and *State Bank of St. Charles v. Burr*, 372 Ill. 114, 22 N.E.2d 941 (1939). As Viking concedes, *Burr* is not relevant. Memorandum of Defendant, Viking Dodge, Inc. at 1.[4] In *Meadows*, a plaintiff employee sued his employer for wrongful termination of his employment contract, for an injunction against collection of plaintiff's notes, and for unpaid wages. The court held for the defendant, finding no breach, and stating that plaintiff could not collaterally attack the unimpeached judgment that defendants had already received elsewhere for the balance due on the notes. The court then added, "Inasmuch as the judgment [on the notes] exceeds the amount he claims due him for unpaid wages, he had no right to recover therefor. Consequently, there was no basis for relief." *Meadows*, 222 F.2d at 349.

We fail to see how this comment supports defendants' position that Illinois allows a judgment debtor to offset a judgment in an enforcement proceeding with an unadjudicated claim against the debtor. *Meadows* did not involve an enforcement proceeding, and the court did not allow the employee to prosecute his independent claim against the bank. As plaintiffs point out, *Meadows* could be read as supporting plaintiffs' position, since the court did not permit the employee to collaterally attack the bank's judgment.

Thus, defendants have cited no case law that supports their position. To the contrary, it appears that in Illinois, a judgment debtor cannot offset with an unadjudicated claim. In *Dias*, the court stated that most state courts do not permit such set-offs, because "[a]llowing the satisfaction of a judgment against a mere claim would undermine the judgment creditor's right to have the judgment satisfied." *Dias*, 732 F.2d at 1043, *citing Piranesi Imports, Inc. v. Furniture Textiles and Wallcoverings*, 31 A.D.2d 742, 296 N.Y.S.2d 922 (1969).

We note that Illinois enforcement proceeding statutes were derived in part from New York practice statutes. *See* Ill.Rev. Stat. ch. 110, ¶ 2–1402, Joint Committee Comments [1955], contained in Smith-Hurd Ill.Anno. at 862. Therefore, in the absence of Illinois case law, if we are to look at any other state's practice, it would be logical to examine New York's, and *Piranesi* supports a conclusion of no set-off.

Illinois also has a statute which specifically permits set-off of *judgments* between the same parties. Ill.Rev.Stat. ch. 110, ¶¶ 12–176–178. The statute says nothing about claims not reduced to judgment, and, therefore, implies that no such set-off is allowed. Moreover, even when a claim is reduced to judgment, Illinois does not permit attorney's fees to be subject to set-off. Ill.Rev.Stat. ch. 110, ¶ 12–178(5).

Given the federal cases disapproving of set-off in TILA cases, the absence of Illinois law allowing such set-offs, and the existence of an Illinois statute allowing set-

---

**3.** In *Valencia*, the Seventh Circuit declined to follow *Plant*'s ruling that lenders' claims are compulsory to TILA claims. The court did not, however, comment on *Plant*'s separate holding concerning set-off of attorney's fees.

**4.** The defendants cite *Burr* only because *Corpus Juris Secundum* cites the case for the proposition that a judgment debtor may under certain circumstances assert an unadjudicated claim as a set-off. 49 *Corpus Juris Secundum*, § 572 at n. 27 (1947). *Corpus Juris Secundum* also cites another Illinois case, *Tegtmeyer v. Tegtmeyer*, 321 Ill.App. 573, 53 N.E.2d 487 (1st Dist.1944) for the opposite view. *Corpus Juris Secundum*, § 572 at n. 33. *Tegtmeyer* is also inapposite.

offs only for judgments, we cannot, sitting as a federal court interpreting state law, find permission for set-off of unadjudicated claims in Illinois' enforcement procedure.

Moreover, and perhaps most importantly, it would also be inequitable to permit such a set-off here. While the Bank's claim was not compulsory, it could have raised its claim as a set-off to plaintiffs' TILA claim in the course of our adjudication. *See Goldstein Oil Co. v. J.M. Sweeney Oil Co.*, No. 84 C 8571, Memorandum Op. at 3 (N.D. Ill. June 14, 1985) (Grady, J.) (permissive counterclaim need not have independent jurisdictional basis if asserted only as defensive set-off). The Bank could also have asserted its claim in state court. Instead, the Bank chose to take neither opportunity to have its claim adjudicated. Now, it (and Viking) is asking us to permit a set-off without any judicial finding that plaintiffs actually owe the Bank any money under the installment contract. Plaintiffs have not conceded liability, and we have no idea whether plaintiffs could successfully raise state defenses to the Bank's claim. *See Valencia*, 617 F.2d at 1291 (debt counterclaim "can raise full range of state law contract issues"). It is true that we have already ruled on several state law issues, when we denied plaintiffs' rescission claim in Count III of their TILA claim. *See Olevares*, Memorandum Op. at 10. It does not follow, however, that plaintiffs have exhausted all their defenses, and an enforcement proceeding is not the forum to make such a determination.[5]

## CONCLUSION

Defendants' motion to quash is denied. A hearing is set for December 3, 1985, at 9:45 a.m. pursuant to plaintiffs' citation to discover defendants' assets.

---

5. The Bank makes a brief allusion to Ill.Rev. Stat. 110, ¶ 12–708 in its memorandum, without explaining why it thinks ¶ 12–708 supports its position. Memorandum in Support of Motion to Quash Citation to Discover Assets at 2. Paragraph 12–708 applies to garnishment proceedings, where the judgment creditor is attempting to collect assets of the debtor in a third party's hands. The third party (often a bank) is defined as a "garnishee." Ill.Rev.Stat. ch. 110, ¶ 12–701, and ¶ 12–708 states that a garnishee is entitled to set off his claims against either the creditor or the debtor, before assets are taken out of his hands. In the absence of any authority, we fail to see how this statute applies in the instant suit, where plaintiffs are attempting to wrest assets away from the debtors themselves.